UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

JOSHUA SNIDER,

        Plaintiff,                     Case No. 1:25-cv-1040

v.                                         Honorable Sally J. Berens

UNKNOWN GIBSON,

        Defendant.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that he is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way he is not a party who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in Lenox Township, Macomb County, Michigan. The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues IBC Officer Unknown Gibson.

Plaintiff alleges that on January 10, 2025, he was walking from the IBC chow hall to the med line. (Compl., ECF No. 1, PageID.3.) During that time, Defendant Gibson started an argument with Plaintiff. (*Id.*) Defendant Gibson handcuffed Plaintiff and placed him in the "shower cage"

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

in segregation. (*Id.*) While there, Plaintiff overheard Defendant Gibson tell an unnamed officer to "write Plaintiff any type of ticket," and Defendant Gibson "can and will sign off on it." (*Id.*)

After about an hour of being held in the "shower cage," Plaintiff was reviewed on a Class I ticket for disobeying a direct order (DDO). (*Id.*) The ticket was written by the unnamed officer but was signed by Defendant Gibson. (*Id.*) Plaintiff was kept in segregation for two weeks and received 30 days' loss of privileges "for something Plaintiff did not do." (*Id.*) Plaintiff goes on to note that he is classified as a Gender Identity Dysphoric/transgender inmate "by the name of Sasha" and that he has a serious mental illness. (*Id.*)

Based upon the foregoing, Plaintiff states that he is asserting Eighth Amendment claims premised upon his placement in segregation and receipt of a false misconduct, a Fourteenth Amendment equal protection claim, and claims regarding violations of MDOC policy. (*Id.*, PageID.4.) Plaintiff's complaint can also be construed to assert Fourteenth Amendment due process claims. Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*, PageID.5.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As set forth above, Plaintiff states that he is asserting Eighth Amendment claims premised upon his placement in segregation and receipt of a false misconduct, a Fourteenth Amendment equal protection claim, and claims regarding violations of MDOC policy. (Compl, ECF No. 1, PageID.4.) Plaintiff's complaint can also be construed to assert Fourteenth Amendment due process claims.

### A.    **Eighth Amendment**

Plaintiff contends that Defendant Gibson violated Plaintiff's Eighth Amendment rights by placing Plaintiff in segregation and issuing Plaintiff a false misconduct ticket, which led to Plaintiff receiving 30 days' loss of privileges. (*Id.*)

5

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under

6

conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff's Eighth Amendment claims fail because he does not allege any facts suggesting that Defendant Gibson's actions denied him any basic human needs. First, as set forth above, Plaintiff remained in segregation for two weeks. However, "[b]ecause placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim." *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)). Thus, Plaintiff cannot maintain an Eighth Amendment claim premised upon his two-week stay in segregation.

Plaintiff also indicates that he received 30 days' loss of privileges as a result of the Class I misconduct. First, the issuance of an allegedly false misconduct ticket does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, No. 98-2138, 1999 WL 1021856, at *2 (6th Cir. Nov. 3, 1999); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001). Moreover, the Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey*, 524 F.3d at 795. In light of *Harden-*

7

*Bey*, given that placement in segregation does not amount to an Eighth Amendment violation, logic dictates that the lesser sanction of loss of privileges would likewise be insufficient to support an Eighth Amendment claim. *See Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017) (noting that "[t]emporary loss of privileges and confinement in segregation—without any allegations that basic human needs were not met—cannot establish an Eighth Amendment claim").

In sum, Plaintiff's allegations regarding his placement in segregation, the receipt of an allegedly false misconduct, and the 30 days' loss of privileges are insufficient to state an Eighth Amendment claim upon which relief may be granted. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims.

    **B.**    **Fourteenth Amendment Claims**

        **1.**    **Equal Protection**

Plaintiff also faults Defendant Gibson for violating his Fourteenth Amendment equal protection rights by "targeting Plaintiff and singling Plaintiff out." (Compl., ECF No. 1, PageID.4.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Plaintiff does not allege that a fundamental right is implicated in this case or that he is a member of a suspect class; his claim, therefore, is not subject to strict scrutiny.[2]

To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "'[T]he hallmark of [a "class-of-one"] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class.'" *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (emphasis removed) (quoting *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010)); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily.") (emphasis in original). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "[U]nless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by

---

[2] Although Plaintiff states that he is a Gender Identity Dysphoric/transgender inmate, the Supreme Court "has not previously held that transgender individuals are a suspect or quasi-suspect class." *United States v. Skrmetti*, 605 U.S. ----, 145 S. Ct. 1816, 1832 (2025).

state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

In this case, Plaintiff fails to allege any facts showing that he was treated differently than another similarly situated individual but merely makes a conclusory assertion that his equal protection rights were violated. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, the Court will dismiss Plaintiff's equal protection claim.

    2.  **Due Process**

The Court has also construed Plaintiff's complaint to assert Fourteenth Amendment procedural and substantive due process claims against Defendant Gibson premised upon the issuance of the allegedly false Class I misconduct ticket.

    a.  **Procedural Due Process**

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). A prisoner's ability to challenge a prison misconduct conviction on due

process grounds, therefore, depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Plaintiff does not explicitly state that he was found guilty of the Class I misconduct, but the Court presumes that he was, given that Plaintiff mentions spending two weeks in segregation and receiving 30 days' loss of privileges. Nevertheless, Plaintiff's allegations reveal that the Class I misconduct did not fall into either of the categories identified in *Sandin* as sanctions that cannot be imposed without due process, that is, those having an inevitable effect on the duration of Plaintiff's sentence or imposing an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

Here, Plaintiff states that he stayed in segregation for two weeks. MDOC Policy Directive 04.05.120 identifies three types of segregation used by the MDOC: temporary segregation, administrative segregation, and punitive segregation. *See* MDOC Policy Directive 04.05.120, ¶¶ M–Z (eff. June 1, 2019). Temporary segregation "is used when it is necessary to move a prisoner from general population (e.g., pending a hearing for a Class I misconduct violation, classification

to administrative segregation, pending an investigation, transfer, etc.)." *See id.* ¶ M. Punitive segregation, on the other hand, is used "only [for an inmate] to serve a detention sanction for a Class I misconduct as ordered by an ALJ." *Id.* ¶ Z.

In *Sandin*, the Supreme Court concluded that disciplinary segregation for 30 days did not impose an atypical and significant hardship. *See Sandin*, 515 U.S. at 484. A stay in segregation is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey*, 524 F.3d at 794. The United States Court of Appeals for the Sixth Circuit has concluded that a stay longer than 30 days in segregation is not necessarily considered an atypical or significant hardship, *see Joseph*, 410 F. App'x at 868; *see also, e.g., Jones v. Baker*, 155 F.3d 810, 812–23 (6th Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

In light of the foregoing, regardless of what type of segregation Plaintiff was placed in, his two weeks in segregation cannot rise to the level of atypical or significant as contemplated by

12

*Sandin*. Likewise, where a stay longer than 30 days in disciplinary or administrative segregation is not considered an atypical or significant hardship, it would be illogical to suggest that the lesser penalty of loss of privileges for that duration could be atypical or significant. Sixth Circuit authority bears that out. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that a 14-days' loss of privileges sanction did not implicate the due process clause); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (nine-month loss of package privileges did not impose an atypical and significant hardship); *Alexander*, 2017 WL 7050641, at *3 (concluding that "thirty days' loss of privileges – did not implicate a protected liberty interest"); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017) (holding that 30 days' toplock and 30 days' loss of privileges "does not amount to an 'atypical and significant hardship' ").

Accordingly, for the foregoing reasons, Plaintiff's Fourteenth Amendment procedural due process claim related to his misconduct proceedings is properly dismissed for failure to state a claim.

### b.    Substantive Due Process

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Moreover, in the context of evaluating a claim of qualified immunity, the Sixth Circuit has noted that "the distinction between attempting to frame an inmate for a misconduct charge by planting evidence on his person and attempting to frame an inmate by giving false testimony is one without a difference." *See Scott v. Churchill*, 377 F.3d 565, 571 (6th Cir. 2004).

Here, Plaintiff alleges that while walking to the med line, he got into an argument with Defendant Gibson. (Compl., ECF No. 1, PageID.3.) Plaintiff subsequently heard Defendant Gibson tell an unnamed officer to write Plaintiff "any type of ticket" and Defendant Gibson would sign off on it. (*Id.*) Plaintiff ultimately received a Class I misconduct for disobeying a direct order. (*Id.*) Notably, however, Plaitniff has not attached a copy of the Class I misconduct to his complaint. Moreover, Plaintiff has not provided any *facts* regarding the argument he had with Defendant Gibson, nor does he provide any *facts* suggesting that he was not guilty of disobeying a direct order. Quite simply, Plaintiff relies upon ambiguous statements to attempt to assert a Fourteenth Amendment substantive due process claim against Defendant Gibson. Ambiguity, however, does not support a claim for relief.

From the scant facts provided by Plaintiff, the Court cannot conclude that Defendant Gibson's actions constituted an "egregious abuse of governmental power." *Cale*, 861 F.2d at 950. Plaintiff's Fourteenth Amendment substantive due process claim will, therefore, be dismissed.

### C. Violations of MDOC Policy

Plaintiff also contends that Defendant Gibson violated MDOC policy by discriminating against Plaintiff and by abusing Plaintiff with "actions, words[,] or behaviors." (Compl., ECF No. 1, PageID.4.)

As an initial matter, claims under section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendant Gibson violated the MDOC's policies fails to state a claim under section 1983.

Additionally, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendant Gibson violated prison policy fails to raise a cognizable federal claim.

Accordingly, Plaintiff's section 1983 claim regarding alleged violations of the MDOC's policies will be dismissed for failure to state a claim.

### Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1). *See McGore*, 114 F.3d at 610–11.

A judgment consistent with this opinion will be entered.


Dated: October 15, 2025         /s/ Sally J. Berens
                                SALLY J. BERENS
                                United States Magistrate Judge